**Dan Quoc LE, Petitioner,**

v.

**Joseph R. GREENE, District Director, United States Immigration and Naturalization Service, Respondent.**

**No. CIV. A. 99–K–1160.**

United States District Court, D. Colorado.

Feb. 9, 2000.

Jim Salvator, Lafayette, CO, for Petitioner.

Michael Hegarty, Asst. U.S. Attorney, Denver, CO, for Respondent.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Petitioner Dan Quoc Le is a 27–year old Vietnamese immigrant who arrived in this country in 1992 as a refugee with his family. He was convicted the following year on an aggravated robbery charge and sentenced to prison. He completed his sentence in 1997 and was immediately transferred to the Immigration and Naturalization Service's (INS's) Wackenhut detention facility in Denver pursuant to a final order of deportation. The INS has been unable to effect Le's removal and acknowledges it is unlikely to do so in the foreseeable future. The United States does not have a repatriation agreement with Vietnam and the Vietnamese government will not issue travel papers for individuals such as Le. The practical effect of this is that Le has remained imprisoned for 2½ years beyond his criminal sentence awaiting deportation. He is being held without charge, without bond, and without any enforceable administrative right to be released.

Le filed the instant *habeas corpus* Petition on June 21, 1999, asserting his continued detention is unlawful under applicable immigration statutes and violates his substantive and procedural due process rights under the Fifth Amendment to the United States Constitution. I have jurisdiction over the issues raised under 28 U.S.C. § 2241. After conducting an individualized review of the facts and the record in this case, I find Petitioner's continued detention unconstitutional and order Respondent to release him to the supervision of

the Attorney General in accordance with the accompanying Order Setting Conditions for Release.

## I. *FACTS AND PROCEDURAL HISTORY.*[1]

Dan Quoc Le arrived in the United States with his parents and siblings in July 1992. He was 20 years old. He and his other family members were immediately accorded refugee status and made their way to Colorado. Within a year, Le had been arrested for participating with several other young Vietnamese men in the robbery of a family at gunpoint in their home. Le claimed he only stood by while others committed the crime, but pleaded guilty in October 1993 to one charge of aggravated robbery.

While serving his sentence on the robbery conviction, Le applied for an adjustment of his immigration status from refugee to permanent resident.[2] The application was denied. Because Le's conviction involved a "crime of moral turpitude," the INS referred him for exclusion/deportation proceedings under 8 U.S.C. § 1227(a). The case was referred to an immigration judge who, on December 5, 1996, concluded Le was removable under § 1227(a)(2) and ordered him deported to Vietnam. The order became final on June 25, 1997, when the Board of Immigration Appeals upheld the decision and dismissed Le's administrative appeal. Le completed his sentence on the robbery conviction in early July 1997, and was discharged directly to an INS detainer. Colo. Dept. Corrections Statutory Discharge (Ex. D, Petr's. 9/2/99 Submission of Supplemental Information).

Le never sought review of the final order by the Tenth Circuit Court of Appeals. Instead, he filed a Motion to Reopen his immigration case on September 22, 1997, asserting additional medical evidence could be submitted in support of his waiver of inadmissibility. The Motion was denied by the BIA on March 6, 1998, on grounds Le had failed to set forth a *prima facie* case for relief under 8 C.F.R. § 3.2(c). Le filed a second Motion to Reopen on June 21, 1999, seeking an opportunity to apply for relief under the Convention Against Torture. That Motion has also been denied.

By the time Le filed his Petition, he had twice sought review of his custody status in accordance with the administrative procedure outlined at 8 C.F.R. § 241.4. Le's first request for release pending deportation was rejected by a "criminal alien review panel" whose three members, after interviewing Le and reviewing his record while in detention, cited various serious and not-so-serious rule infractions[3] as grounds for their being "UNABLE to conclude [that] [Le] is not likely to pose a threat to the community." Crim. Alien Review Sheet dated 8/19/98 (attached as Ex. 1 to Govt.'s Resp. Order to Show Cause). Le's status was again reviewed nine months later, in May 1999. While there is no documentation of this review in the record, the government represents that Le again failed to convince the Director that he was "not a danger to the community or a significant flight risk." (Govt.'s Resp. at p. 3.) Le filed his habeas Petition on June 21, 1999.

I held a hearing on the Petition on August 13, 1999. At the hearing, the government took exception to certain representations by Petitioner's counsel

---

1. Le's criminal and immigration proceedings history is based on the government's recitation of the same in its Response to Order to Show Cause rather than any independent review of relevant orders or documents, which were not submitted with the Response.

2. Other members of Le's family have become U.S. citizens or obtained lawful permanent resident status since then.

3. The identified infractions included incidents ranging from "physical assault-fighting" to "took box of ice cream from meal line into his dorm w/out authorization." Crim. Alien Review Sheet, p. 2.

regarding Petitioner's conduct while at Wackenhut, and offered to submit supplemental materials to support its contention that Le was a danger to the community and not fit for release. Le, in turn, offered also to submit additional materials to support his request for release, including letters from family and documentation of an offer of employment. Accordingly, I deferred my ruling to allow the parties to file supplemental materials, which they did in amounts totaling several hundred pages. In the interim, I presided over back-to-back six and ten-week jury trials that interfered with my ability to address the supplemental filings, records and legal briefs submitted by counsel.[4] I have now done so, and rule as follows:

## II. *JURISDICTION.*

■ Le is not challenging the merits of his underlying deportation order or the discretionary determinations of the Director or the Director's designees that he is unsuitable for release. Instead, Le is challenging the constitutionality of his continued administrative detention when the administrative agency holding him cannot effect his deportation. Le claims his administrative "detention pending deportation" is a pretext for punitive incarceration without charge and without a crime. This, Le claims, violates his Fifth Amendment rights under the United States Constitution, rights which every human being imprisoned in this country retains, regardless of their citizenship or status. *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382, 1389–90 (10th Cir.1981).

■ There can no longer be any dispute that the habeas jurisdiction of the federal courts to consider such challenges under 28 U.S.C. § 2241 has survived Congress's enactment in 1996 of the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), amending multiple provisions of the Immigration and Nationality Act (INA), *codified at* 8 U.S.C. § 1101(f). While these Acts adversely impacted aliens generally and authorized, among other things, the detention without trial of aliens convicted of certain crimes, *see* 8 U.S.C. §§ 1226(c), 1231(a)(3), they could not and did not abrogate the Great Writ or the fundamental right of all individuals, including illegal aliens, to challenge the constitutionality of their detention thereunder. *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1146 (10th Cir.1999) (holding that review under § 2241 still available notwithstanding express language in IIRIRA barring review "by any court" of final orders of removal for aliens deportable by reason of having committed a criminal offense, 8 U.S.C. § 1252(g), and distinguishing between direct and collateral review); *see Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 943–45, 142 L.Ed.2d 940 (1999) (§ 1252(g) operates to bar judicial review in only three discrete instances: when the Attorney General decides or acts to "commence proceedings, adjudicate cases, or execute removal orders" against an alien), *discussed in Jurado–Gutierrez,* at 1144. *Accord Martinez v. Greene,* 28 F.Supp.2d 1275, 1278 (D.Colo.1998) (Babcock, J.)(tracing effect of AEDPA and IIRIRA on and concluding federal district courts retain jurisdiction under § 2241 and Suspension Clause to address constitutional claims); *c.f. Parra v. Perryman,* 172 F.3d 954, 956–57 (7th Cir.1999) (criticizing *Martinez* and

---

4. A third review of Le's status also took place during this period, again resulting in a recommendation against release. *See* 12/21/99 Decision to Continue Detention Following File Review (Ex. E, Petr.'s Exs. in Supp. Mot. Prelim. Inj., filed 1/13/2000). Upon review of Le's record while at Wackenhut, the District Director found evidence of 24 rules infractions committed by Le and no evidence that Le had undertaken any efforts at rehabilitation. Acknowledging letters from Le's family supporting Le's release and offering him employment with the family business, the Director concluded Le had "failed to demonstrate by clear and convincing evidence that [his] release would not pose a danger to the community." Decision at p. 2.

taking more expansive view of IIRIRA's impact, but acknowledging resort to Great Writ "may be appropriate" for those detained indefinitely because the nations of which they are citizens will not take them back).

Subsection (c)(3) of 28 U.S.C. § 2241 authorizes the grant of a writ of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." The Great Writ as it is known is "one of the bulwarks of liberty" under the Anglo–American system of government and has historically afforded the jurisdictional basis for courts to review the constitutionality of executive detention. *Discussed in Hermanowski v. Farquharson*, 39 F.Supp.2d 148, 153 (D.R.I.1999) (tracing federal statutory jurisdiction over Great Writ from its pre-Magna Charta roots to Judiciary Act of 1789 to 28 U.S.C. § 2241). Courts in this circuit have not hesitated to exercise their habeas jurisdiction either before or after enactment of IIRIRA to review the constitutional claims of individuals, like Le, who are being held in federal custody, without charge or criminal conviction, under an order for deportation that cannot be effected. Beginning in 1981 with the Tenth Circuit's *Rodriguez–Fernandez* decision, those for whom "temporary" administrative detention pending removal has become a legal fiction have found redress in our courts. 654 F.2d at 1389–90 (where government could not show Mariel Cuban's detention still temporary pending expulsion, rather than incarceration as alternative to departure, federal constitution compelled release). *Applied in Thien Van Vo v. Greene*, 63 F.Supp.2d 1278 (D.Colo.1999) (ordering release of citizens of Vietnam and Laos subject to indeterminate detention pending deportation); *Duy Dac Ho v. Greene*, No. 98–D–861, Order (Aug. 10, 1998)(ordering release of Vietnamese citizen), *request for stay denied* Dec. 31, 1998; *Loi Tan Nguyen v. Greene*, No. 98–D–1342, Order (Mar. 11, 1999)(same); *Chheath Kim Pril v. Greene*, No. 98–N–1405, Order Setting Conditions of Release (May 6, 1999)(same).

## III. *LEGAL STANDARDS ON REVIEW.*

I agree with the other judges of this court who have addressed the issue that *Rodriguez–Fernandez* continues to articulate the standard for evaluating the legality of an alien's continuing detention when the country to which he is to be deported will not receive him.

■ *Rodriguez–Fernandez* involved the constitutional claim of a Mariel Cuban who had been in detention pending removal to Cuba for one year with little hope of repatriation in the foreseeable future. Noting petitioner was not challenging the constitutionality of his ordered exclusion (which challenge would be unavailing both before and after enactment of IIRIRA given that aliens seeking admission to this country have no constitutional protections against exclusion, *compare* 8 U.S.C. § 1225(b) (1976) *and* 8 U.S.C.A. § 1231(a) (1999)) but the constitutionality of his continued detention, the Tenth Circuit concluded habeas jurisdiction would lie. 654 F.2d at 1386. Citing the Supreme Court's decisions in *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) and *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896), which provided that no person within the territory of the United States, not even aliens in this country illegally, shall be held to answer for a crime without charge or be deprived of life, liberty or property without due process of law, the Tenth Circuit ruled that Rodriguez–Fernandez's continued detention could constitute "punishment without due process of law" in violation of the Fifth Amendment if it continued beyond the government's reasonable efforts to expel him. *Id.* at 1387.

'The right to arrest and hold or imprison an alien is nothing but a necessary incident of the right to exclude or deport. There is no power in this court or in any other tribunal in this country to hold indefinitely any sane citizen or alien in imprisonment, except as a punishment for crime. Slavery was abolished by the Thirteenth Amendment. It is elementa-

ry that deportation or exclusion proceedings are not punishment for crime . . . . [Petitioner] is entitled to be deported, or to have his freedom.' *Rodriguez–Fernandez,* 654 F.2d at 1387–88 (quoting *Petition of Brooks,* 5 F.2d 238, 239 (D.Mass.1925)).

In an argument rejected by the other judges of this court who have considered it, the government contends *Rodriguez–Fernandez* no longer applies because the post-IIRIRA statutory scheme is "different" from the one that existed at the time of that decision and because, under that scheme, aliens are entitled to periodic reviews of their detention status and may be recommended for release upon a proper showing. According to the government, the continuing detention of unremovable aliens can no longer be considered "indefinite" so as to trigger due process considerations of *Rodriguez–Fernandez.* Supp. Br. of Respondent at 2. The assertion misses the mark. While Congress may have bolstered and shielded the discretionary authority of immigration officials to pursue and remove excludable and deportable aliens, it has not and cannot authorize a deprivation of liberty that offends the Constitution of the United States. Where, as here, an alien is challenging the legality of his indeterminate detention generally and not his order of removal or any specific discretionary decision of the INS to detain or decline to release him pending removal, the Fifth Amendment to the United States Constitution is implicated and *Rodriguez–Fernandez* governs.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. 104–132, 110 Stat. 1214, 1258–81 and Pub.L. 104–208, 110 Stat. at 3009–540 through 3009–724 respectively, amending multiple provisions of the Immigration and Nationality Act (INA) to restrict the rights and eligibility of illegal immigrants for relief from deportation and removal, particularly those who had been convicted of crimes. As part of that process, Congress shortened the period during which an alien subject to a final order of deportation must be removed from the country from six months to 90 days and narrowly circumscribed such aliens' ability to challenge the order or stay its execution.

Unaltered from the pre-AEDPA and IIRIRA statutory scheme, however, were provisions authorizing the detention of criminal aliens pending removal and, in the case of aliens for whom removal within the prescribed removal period proves impossible, "supervision under the regulations prescribed by the Attorney General" *See* 8 U.S.C. §§ 1225(b), 1252(d) (1976)(pre-AEDPA and IIRIRA scheme), *codified after amendment at* 8 U.S.C.A. §§ 1226(c), 1231(a)(3) (1999). "The regulations [governing supervision after expiration of the removal period]" Congress continued, "shall include provisions requiring the alien . . . to appear before an immigration officer periodically for identification . . . . and to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." *Id.* at §§ 1252(d), 1231(a)(3). While it seems clear Congress was describing supervision of aliens *after* they were released from custody upon expiration of the removal period, the Attorney General nevertheless invoked her supervisory authority under post-IIRIRA § 1231(a)(3) to provide for the indefinite continued detention of aliens beyond the removal period "until removal [is effected]." 8 C.F.R. § 241.4(a) & (b) (1999).[5] Under § 241.4, aliens like

---

**5.** Specifically, 8 C.F.R. § 241.4(a) authorizes district directors to

continue in custody any alien inadmissible under section 212(a) of the Act [8 U.S.C. § 1182(a)]or removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) of the Act [8 U.S.C. § 1227(a)(1)(C), (a)(2) or (a)(4)], or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States.

Because Le was convicted of a crime of moral turpitude, he falls within the category of aliens subject to continued detention under 8 C.F.R. § 241.4.

Le are presumptively subject to continuing detention and are not eligible for supervised release unless and until they "demonstrate[ ] by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk." § 241.4(a). There is no enforceable right to counsel and no adversarial process through which the alien may marshal or present evidence on his own behalf or discover and challenge evidence offered by the government. Even if an alien makes the required showing, moreover, the decision to release or not release him is left entirely to the discretion of the Director and is not subject to any form of review, administrative or judicial. *Id.*

In a deft transposition of design, the government contends that 8 C.F.R. § 241.4, as applied in accordance with internal INS policy memoranda,[6] has done away with the constitutional infirmity addressed in *Rodriguez–Fernandez* by putting an end to "indefinite detention." I disagree. Not only is the contention itself facially untrue (by authorizing the director to detain unremovable aliens "until [their] removal" regardless of any showing made, § 241.4 actually codifies, rather than ameliorates, the practice of indefinite detention for individuals like Le), it grossly trivializes the constitutional protections at issue.

There is no equating an alien's unreviewable and unenforceable administrative "right" under § 241.4 to "prove" his eligibility for supervised release with the government's obligation, under *Rodriguez–Fernandez,* to prove administrative detention is not a sham for a deprivation of liberty without due process. The issue is not any due process "right" of Le to be released under § 241.4 or any "right" of Le to remain in the United States at all. Instead, it is Le's right as a person being held in a detention facility within our shores not to be deprived of his liberty as punishment for crime without due process of law.

That aliens removable under our post-IIRIRA statutory scheme by virtue of their having committed a crime enjoy no constitutional protections against deportation does not mean they are without constitutional protections against unlawful acts of the government before removal is effected. Just as "Congress could not order the killing of [an excludable alien]" awaiting deportation, it cannot authorize the INS to imprison him for life as an alternative to removal. *Rodriguez–Fernandez,* 654 F.2d at 1387–88 (INS detention becomes impermissible punishment under *Wong Wing* and *Petition of Brooks* when it continues beyond reasonable efforts to expel the alien).[7] Under the nar-

6. *See* Memorandum from Pearson to All Regional Directors, District Directors and Officers in Charge, *Interim Changes and Instructions for Conduct of Post-order Custody Reviews* (dated August 6, 1999)(providing for in-person interview immediately following the expiration of the removal period, a review nine months later, and six month reviews thereafter, "alternating between a file review by the District Director (without an interview unless the Director, in his discretion, determines that one would be useful, and without Headquarters review), and a review with the opportunity for an interview at the alien's request and with Headquarters review"). While the Instructions provide for notice to the alien of a pending review and a rather meaningless right to be represented by counsel at the alien's own expense, these "rights" are not binding on the agency and not subject to enforcement by any means under the INA.

7. For this reason, the unwise distinction some courts have attempted to draw between the constitutional rights of "deportable" criminal aliens (aliens who gained formal "admission" into the United States before becoming removable by virtue of having committed a crime, deemed to have a modicum of constitutional protection against indefinite detention) on the one hand and "excludable" criminal aliens (like refugees or others who had never formally gained admission, deemed to be "detained at the border" and therefore without any constitutional protection against indefinite detention) on the other, *discussed in Hermanowski,* 39 F.Supp.2d at 157 (analyzing cases), is thankfully irrelevant in this circuit. In *Rodriguez–Fernandez,* the Tenth Circuit rejected the "euphemistic fiction" that detention of excludable aliens is merely a "continuation of the exclusion" without Fifth Amendment implications, distinguishing *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (case first recognizing "entry fiction"), and

row circumstances where Congress has authorized pretrial detention or similar deprivations of liberty without charge or trial, it is the government that bears the burden of proving such detention is both temporary and necessary to effect its purpose (here, removal) and not indefinite and punitive incarceration without due process. The perfunctory, nonbinding and unreviewable administrative process contemplated by 8 C.F.R. § 241.4 and the INS's 1999 *Interim Procedures Memorandum* neither alters this constitutional scheme nor excuses the government from meeting its burden under *Rodriguez–Fernandez.*

## IV. *DISCUSSION.*

There is no dispute that Petitioner is a convicted felon, that his was a serious crime and that, during his incarceration and administrative detention, he has been less than a model prisoner. Nevertheless, Le long ago served the time he was sentenced to serve yet remains imprisoned, without charge, without any new crime or conviction, and without any meaningful chance to be either removed to Vietnam or released under INS supervision pending removal.

 When an excludable alien in custody tests his detention by writ of habeas corpus, the burden is on the government to show his detention is still temporary pending expulsion, and not simply incarceration because the government cannot effect his departure. *Rodriguez–Fernandez,* 654 F.2d at 1390. Here, I find the government has failed to demonstrate that its continuing detention of Le is temporary or reasonably related to the government's efforts to remove him. To the contrary, the government effectively concedes deportation of Le and other Vietnamese citizens generally is unlikely in the foreseeable future. *See* Letter from INS District Director Greene to counsel, dated June 9, 1999 (in separate case involving Vietnamese citizen, Director acknowledges alien "has no relief available to him and possibility of deportation to Vietnam is unlikely"). Nor has the government established that Le is a flight risk. To the contrary, the evidence presented shows Le enjoys strong family ties here in Denver that militate against any such finding.

Under these circumstances, Le must be released. I conclude Le's continuing detention has extended well beyond that which is necessary to effect his removal and has become punitive imprisonment without due process in contravention of Le's fundamental rights under the Fifth Amendment. These are rights Le enjoys regardless of his status as an "excludable" or "deportable" alien without any cognizable right to remain in this country. I find Le is no greater risk to commit new crimes than is any other convicted felon released after serving his sentence. His experience in the criminal and immigration detention systems, together with the love and support he has been shown by his family, suggest the contrary is more likely. Accordingly,

---

recognizing that *Mezei* has been "criticized as the nadir of the law with which the opinion dealt." Instead, the Tenth Circuit determined that detention pending deportation was more properly analogized to incarceration pending trial or other disposition of a criminal charge, "and is, thus, justifiable only as a necessary temporary measure." *Id.* at 1387.

I agree with the Tenth Circuit and will play no part in endorsing an "entry fiction" by which "deportable" aliens are deemed to enjoy constitutional protections against indefinite detention under the post-IIRIRA statutory scheme but excludable aliens are not. The premise that the release of an excludable

alien to the supervision of the Attorney General under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5 is tantamount to "admitting" him into this country as a lawful resident has no basis in fact and, in my view, has been urged solely as a means for justifying an expedient—and unconstitutional—end. I note Judge Miller implicitly recognized the "entry fiction" distinction between deportable and excludable aliens in *Vo,* 63 F.Supp.2d at 1282–83, but, because that recognition occurred in dicta and was unnecessary to his ruling in that case (both petitioners were deportable, not excludable, aliens), it is without persuasive value.

IT IS ORDERED that Le shall be released from the custody of the Immigration and Naturalization Service upon the terms and conditions set forth in the accompanying Order Setting Conditions for Release.