**Juan PEREZ–DIAGO, Petitioner,**

v.

**J.E. GUNJA, Warden, U.S. Attorney General, Immigration & Naturalization Service, Respondents.**

**No. CIV.A. 01–Z–2419(MJW).**

United States District Court,
D. Colorado.

May 5, 2003.

Juan Perez, Florence, CO, pro se.

Mark S. Pestal, United States Attorney's Office, Denver, CO, for respondents.

### ORDER AND JUDGMENT OF DISMISSAL

WEINSHIENK, Senior District Judge.

This matter is before the Court on a Recommendation On Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241 By A Person In Federal Custody, issued on March 12, 2002, by United States Magistrate Judge Michael J.

Watanabe. The pro se Petitioner, Juan Perez–Diago, has filed objections to the Recommendation. Pursuant to Fed. R.Civ.P. 72(b) and 28 U.S.C. § 636(b), this Court has reviewed *de novo* the Magistrate Judge's Recommendation, Petitioner's objections, and the applicable case law. This Court finds the Magistrate Judge's Recommendation to be thorough, thoughtful, and accurate on the law. Therefore, as explained in more detail below, this Court accepts and adopts the Magistrate Judge's findings and Recommendation.

Petitioner is a "Mariel Cuban," a Cuban national that entered this country in 1980 during the "Mariel boat lift." He was paroled into the United States on May 25, 1980. In 1983, he was convicted of attempted murder, carrying a concealed firearm, and possession of a firearm while engaged in a criminal offense, and was sentenced to ten years in prison. Upon completion of his sentence in 1988, Petitioner was placed into Immigration and Naturalization Service (INS) custody. He applied for asylum, was denied, and was ordered excluded and deported.

In 1989, Petitioner was evaluated by the Cuban Review Panel (the Panel) and determined to be releasable under the criteria established by the Cuban Review Plan.[1] The Cuban Review Plan is a federal regulatory scheme promulgated in 1987 to establish procedures for immigration parole determinations regarding Mariel Cubans. In accordance with the determination of the Panel, Petitioner was paroled to a halfway house in Kansas City, Missouri. Less than a year later, his parole was revoked after he was discovered in possession of crack cocaine and large sums of money.

Since that time, Petitioner has remained an excludable alien in federal custody awaiting deportation to Cuba. Cuba has

---

1. *See* 8 C.F.R. § 212.12–13

not accepted him back, and his attempts to find a third country willing to accept him have been unsuccessful. He argues that his continued detention under an INS hold amounts to indefinite imprisonment in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. Petitioner also argues that the Attorney General must parole him pursuant to 8 U.S.C. § 1182 and the Cuban Review Plan regulations.

The Magistrate Judge concluded that Petitioner had not made a claim for violation of procedural due process, and accordingly analyzed the complaint under the law of substantive due process.

■ The Magistrate Judge correctly determined that as a Mariel Cuban, Petitioner does not have the typical legal status of an immigrant arriving in this country. Rather, like the other Mariel Cubans, he was paroled into the United States, and although physically present here for some twenty years now, is still "legally considered to be detained at the border and hence as never having effected entry into this country."[2] In the eyes of the law, he remains an excludable alien.

The Supreme Court held in 1953 that an excludable alien may be detained indefinitely when his country of origin will not accept his return.[3] Unlike aliens that have entered U.S. soil, even illegally, "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'"[4] In the case of Mariel Cubans like Petitioner, Congress has authorized the procedures of the Cuban Review Plan.

The 1953 ruling in *Mezei* was neither altered nor abrogated by the Supreme Court's 2001 decision in *Zadvydas v. Davis*.[5] In that case, the Court held that aliens once admitted to this country but subsequently ordered deported could not be indefinitely detained. The Court in *Zadvydas* carefully restricted its holding to the facts of that case, and *Mezei* remains good law with regard to excludable aliens that have never affected legal entry into this country.[6] Therefore, as the Magistrate Judge correctly concluded, Petitioner's continued detention does not violate substantive due process.

Petitioner appears to argue in his objections to the Magistrate Judge's Recommendation that his petition does raise a procedural due process claim. Since Petitioner appears pro se, this Court will construe his pleadings and other papers liberally and hold them to a less stringent standard than more formal papers filed by lawyers.[7] Petitioner does not elaborate on the details of any procedural due process claim, however, and instead relies heavily on Senior Judge John L. Kane's decision in *Le v. Greene*,[8] a 2000 case from this district. The decision in *Greene* is distinguishable on its facts as that case did not involve a Mariel Cuban subject to the Cuban Review Plan, which is a unique legal and administrative status. Further, as a

**2.** *Sierra v. I.N.S.*, 258 F.3d 1213, 1218 (10th Cir.2001).

**3.** *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

**4.** *Id* at 212, 73 S.Ct. 625.

**5.** 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

**6.** *See Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001).

**7.** *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

**8.** 84 F.Supp.2d 1168 (D.Colo.2000).

district court decision, *Greene* is not controlling authority, and it was decided prior to the clear statements of the law on excludable aliens that were rendered in *Zadvydas, Sierra,* and *Hoyte–Mesa.*

■ Even if Petitioner had properly stated a procedural due process claim, which this Court is unable to conclude, such a claim would "face a high hurdle," [9] as the Cuban Review Plan provides detailed procedures for the continuing review of Petitioner's parole status, and he has indeed availed himself of those procedures. The Cuban Review Plan regulations are, therefore, "the procedure authorized by Congress," and are sufficient due process "as far as an alien denied entry is concerned.'"[10] Petitioner receives annual reviews pursuant to the regulations, and was most recently interviewed on February 8, 2002, for purposes of completing another review. In fact, application of these procedures resulted in Petitioner being released to a halfway house in 1990. It was only after further violations of the law that he was returned to custody. The Court therefore concludes that Petitioner has received appropriate procedural due process.

Even after *Zadvydas,* the law is clear that as an excludable Mariel Cuban, Petitioner is due only that process which Congress has provided in the form of the Cuban Review Plan. Neither the statute nor the regulations compel his release. In fact, like the Plaintiff in *Hoyte–Mesa,* Petitioner's current detention "results not only from his excludable status, but also from his violation of parole conditions." [11] Accordingly, it is

ORDERED that the Recommendation On Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241 By A Person In Federal Custody, entered March 12, 2002, by United States Magistrate Judge Michael J. Watanabe is adopted and approved. It is

FURTHER ORDERED that the Amended Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241 By A Person In Federal Custody, filed December 13, 2001, is denied, and the cause of action is dismissed.

---

9.  *Sierra,* 258 F.3d at 1218.

10.  *Mezei,* 345 U.S. at 212, 73 S.Ct. 625.

11.  *Hoyte–Mesa,* 272 F.3d at 992.