**Marcial NAPOLES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE and John Ashcroft, Attorney General, Respondents.**

**No. CIV. 3:02CV2116(PCD).**

United States District Court,
D. Connecticut.

July 22, 2003.

Marcial Napoles, Pro Se, Osborn CI, Somers, Gerald Lewis Harmon, Meriden, for Marcial Napoles, petitioner.

William M. Brown, Jr., U.S. Attorney's Office, New Haven, for INS, respondent.

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

DORSEY, District Judge.

Petitioner moves pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus claiming that he is illegally detained by the Immigration and Naturalization Service ("INS"). For the reasons set forth herein, the petition for writ of habeas corpus is **denied.**

### I. Background

Petitioner is a native and citizen of Cuba who arrived in the United States at Miami, Florida on or about November 20, 1995. At that time, he was paroled into the United States pursuant to § 212(d)(5) of the Immigration and Nationality Act ("INA").

On February 25, 1998, Petitioner was convicted in state court of Second Degree Assault in violation of Conn. Gen.Stat. § 53a–60(a)(1). On February 1, 2001, he was convicted of disorderly conduct in violation of Conn. Gen.Stat. § 53a–182. On August 6, 2001, removal proceedings were commenced against Petitioner, and his parole status was terminated. After completing his state court sentence, Petitioner was subsequently taken into INS custody on August 8, 2001, where he has since remained. On October 17, 2001, he was ordered removed to Cuba by an Immigration Judge ("IJ") as an inadmissible, criminal alien in the United States without proper admission pursuant to INA §§ 212(a)(2)(A)(i)(I) and 212(a)(6)(A)(i).[1] Petitioner did not appeal the IJ's order to the Board of Immigration Appeals ("BIA"). On October 31, 2001, INS sent a request to the Consulate General of Cuba for the expedited issuance of travel documents. Cuba has not responded to this request.

### II. Discussion

Petitioner argues that he poses no risk to the community and that he has no reasonable foreseeability of being removed, and therefore is being held in confinement for an indefinite period of time in violation of his Fifth Amendment right to due process of the law. He requests that he be immediately released on a probationary parole under INS supervision, pending his removal. Petitioner relies on *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) to support his position, and contends that the *Zadvydas* holding extends to inadmissible (or what used to be called excludable) aliens.[2] Respondent argues that Petitioner's claim lacks merit

---

1. *See* 8 U.S.C. § 212(a)(2)(A)(i)(I) (crime involving moral turpitude) and § 212(a)(6)(A)(i) ("An alien present in United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

2. Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 was enacted, the INA deemed aliens at the border seeking entry to the United States, or aliens ineligible for admission, as "excludable." *See Chi Thon Ngo v. INS,* 192 F.3d 390, 395 n. 4 (3d Cir.1999). Pursuant to the IIRIRA, the

because *Zadvydas* does not apply to aliens, such as Petitioner, who were "paroled" into the United States and were never lawfully admitted.

## A. Statutory Authority to Detain Indefinitely

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Petitioner's detention by the INS is governed by 8 U.S.C. § 1231(a)(6). Section 1231(a) provides generally that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a). During the 90-day "removal period," detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) provides, however, that "[a]n alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).[3] The statute does not specify any time limit regarding detention.

## B. *Zadvydas, Mezei,* and "Entry Fiction"

In *Zadvydas,* the Supreme Court considered the applicability of 8 U.S.C.

§ 1231(a)(6) to aliens who were admitted to the United States but later ordered removed. *Zadvydas,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653. Although § 1231(a)(6) sets no time limits on how long an alien may be detained beyond the 90-day period, the *Zadvydas* Court read the provision to limit "an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689, 121 S.Ct. 2491. The Court deemed six months as a presumptively reasonable period of post-removal detention. *Id.* at 699–702, 121 S.Ct. 2491.

However, despite some language referring to aliens and § 1231(a)(6) generally, the *Zadvydas* Court indicated that its holding was very narrow, cautioning that "[w]e deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question." *Id.* at 682, 121 S.Ct. 2491.[4] The *Zadvydas* Court did not answer this question.

*Shaughnessy v. United States ex rel Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed.

---

constitutional protections of an alien hinge on whether he has been "admitted" into the United States. *See id.* Both aliens who enter without inspection and "excludable" aliens who are inspected but denied admission are classified as "inadmissible" because they were never officially admitted into the United States. *See* 8 U.S.C. § 1101(a)(13)(A). "An alien who does not enter the United States legally is not 'admitted.'" *Rosales–Garcia v. Holland,* 322 F.3d 386, 391 n. 1 (6th Cir. 2003), *cert. denied sub nom. Snyder v. Rosales–Garcia,* —— U.S. ——, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003) (citing 8 U.S.C. § 1101(a)(13)).

3. 8 U.S.C. § 1182(d)(5) provides that "parole of such an alien [for humanitarian or public benefits reasons] shall not be regarded as admission of the alien. . . ." *See also* 8 U.S.C.

§ 1101(a)(13)(B) ("An alien who is paroled under § 1182(d)(5) . . . shall not be considered to be admitted").

4. 8 U.S.C. § 1231(a)(6) applies to three groups of removal aliens:

(1) aliens who are "inadmissible under section 1182" ("aliens who are removable on grounds of inadmissibility"); (2) aliens who are deportable under §§ 1227(a)(1)(C) (violation of nonimmigrant status or condition of entry), 1227(a)(2) (criminal offenses), and 1227(a)(4) (security and related grounds) ("aliens who are removable on grounds of deportability"); and (3) aliens who are "a risk to the community or unlikely to comply with the order of removal."

*Rosales–Garcia v. Holland,* 322 F.3d at 404 n. 24 (citing 8 U.S.C. § 1231(a)(6)).

956 (1953) "established what is known as the 'entry fiction,' which provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995) (internal citations and quotations omitted). Acknowledging *Mezei*,[5] the *Zadvydas* Court noted that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 692–93, 121 S.Ct. 2491 (citing *Kaplan v. Tod*, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925)) (despite nine years' presence in the United States, an "excluded" alien "was still in theory of law at the boundary line and had gained no foothold in the United States"); *Leng May Ma v. Barber*, 357 U.S. 185, 188–90 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) (alien "paroled" into the United States ... had not effected an "entry"). *See also Correa v. Thornburgh*, 901 F.2d 1166, 1169 n. 3 (2d Cir.1990) ("An alien paroled into the United States has not 'entered' the United States for immigration purposes."). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491.

*Zadvydas* distinguishes admitted aliens who have "entered" the United States from inadmissible aliens who have not "entered," and limits its holding to admitted aliens. Accordingly, *Zadvydas* does not provide clear authority for the proposition that the time limit on post-removal detention for resident aliens extends to the post-removal detention of inadmissible aliens.

## C. Application of *Zadvydas* to Inadmissible Aliens

There is a circuit split on whether *Zadvydas* extends to inadmissible aliens. The Sixth and Ninth Circuits have held that *Zadvydas* applies to all aliens regardless of their status as either resident or inadmissible. *See Rosales–Garcia v. Holland*, 322 F.3d 386, 405–08 (6th Cir.2003) (en banc), *cert. denied sub nom. Snyder v. Rosales–Garcia*, —— U.S. ——, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003) (the holding in *Zadvydas* is "unqualified" and applies to inadmissible aliens); *Xi v. INS*, 298 F.3d 832, 835–36 (9th Cir.2002) ("The clear text of the statute, coupled with the Supreme Court's categorical interpretation, leaves us little choice but to conclude that *Zadvydas* applies to inadmissible [aliens]"). However, other circuits have adopted a more limited construction of *Zadvydas*, finding that *Zadvydas* does not extend to inadmissible aliens. *Borrero v. Aljets*, 325 F.3d 1003, 1007 (8th Cir.2003) ("In light of the fact that *Zadvydas* expressly distinguished *Mezei* on the grounds that *Mezei* had not made an entry into the United States, we conclude that *Zadvydas*'s six-

---

**5.** In *Mezei* the petitioner, once a lawfully admitted alien, had left the United States for nineteen months. *Mezei*, 345 U.S. at 208, 73 S.Ct. 625. When he returned, he was temporarily excluded under the Passport Act, and later permanently excluded "on a finding that petitioner's entry would be prejudicial to the public interest for security reasons." *Id.* The Government was unable to find any other country to accept petitioner. *Id.* at 209, 73 S.Ct. 625. Some courts have suggested that *Mezei* should be limited to its facts, which included "the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security." *Rosales–Garcia*, 322 F.3d at 413–14.

month presumption of reasonableness is inapplicable to inadmissible aliens."); *Rios v. INS*, 324 F.3d 296, 297 (5th Cir.2003) (per curiam) (same); *Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001) (*Mezei* remains good law after *Zadvydas*, and "the United States [can] constitutionally detain an excludable alien indefinitely if his country of origin refused to accept his return"); *see also Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir.2001), *cert. denied* 534 U.S. 1071, 122 S.Ct. 676, 151 L.Ed.2d 589 (2001) ("The Due Process Clause does not provide [an inadmissible Mariel Cuban] a liberty interest in being released on parole").

The Second Circuit has not directly addressed the applicability of *Zadvydas* to inadmissible aliens. In a pre-*Zadvydas* case, which has not been overruled, the Second Circuit held that "the Attorney General has the authority to indefinitely detain excludable aliens" and that such detention does not violate Due Process. *Guzman v. Tippy*, 130 F.3d 64, 65–66 (2d Cir.1997) (citing majority of other circuit courts finding same). In a recent post-*Zadvydas* case, in dicta the Second Circuit suggested but did not hold that *Zadvydas'* reasonable forseeability test applies to all aliens. *See Wang v. Ashcroft*, 320 F.3d 130 (2d Cir.2003).

### 1. *Guzman* and the Indefinite Detention of Excludable Aliens

*Guzman* involved a Mariel Cuban who was paroled upon entry to the United States upon his arrival to the United States in 1980. *Id.* at 65. Seven years later he was convicted for second degree murder and sentenced to eight years imprisonment, and his immigration parole was revoked. *Id.* Upon his release from prison in 1992 he was released into INS custody for an exclusion hearing, at which he was ordered excluded. *Id.*

Cuba refused to admit him, and he remained incarcerated. *Id.* During periodic parole eligibility reviews by an INS panel, his parole was denied as contrary to public interest. *Id.* The court found that "Congress intended to grant the Attorney General the authority to detain excluded aliens indefinitely," and that "[i]ndefinite detention of excludable aliens does not violate due process." *Id.* at 66 (citations omitted). *See also Thevarajah v. McElroy*, 01–CV–3009, 2002 WL 923914, 2002 U.S. Dist. LEXIS 8049, at *15–*16 (E.D.N.Y. Apr.30, 2002) (under *Guzman* and *Zadvydas*, inadmissible aliens may be detained indefinitely).

### 2. *Wang*'s Suggestion that *Zadvydas* Might Apply to Inadmissible Aliens

In *Wang*, the court considered the petitioner's claim that the Government violated his Fifth Amendment Due Process rights by detaining him after he was released from state custody without granting him a bond hearing before an Article III court. *Wang*, 320 F.3d at 145. In holding that the petitioner's "continued detention without an opportunity for bail is not in violation of his constitutional right to due process of law," the Second Circuit briefly discussed *Zadvydas* in dicta. *Id.* at 146–47. Although *Wang* generally states that "we may safely assume that [the *Zadvydas* 'reasonable foreseeability'] test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights," *id.* at 146, the court did not expressly consider *Zadvydas'* distinction between resident and inadmissible aliens, and did not explain how *Zadvydas* comports with *Guzman*, which has not been overruled and remains good law. The *Wang* court found that because the petitioner's removal was "not merely reasonably foreseeable, but immi-

nent, [his] continued detention does not violate his due process to law." *Id.* at 146. Given the *Wang* court's cursory discussion of *Zadvydas*, its lack of discussion of *Mezei* and how (if at all) *Zadvydas* affects *Guzman*, and the substantial difference between the facts of *Wang* and the present case, this Court does not find it safe to assume that *Wang* intended to overrule *Guzman* and stand as authority that the *Zadvydas* holding extends to inadmissible aliens.

Even though this Court seriously questions the vitality of *Guzman* after *Zadvydas* and *Wang*, this Court is bound by *Guzman*'s holding. *See Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions") (internal citation and quotation omitted).

In the absence of clear authority otherwise from the Second Circuit Court of Appeals, this Court is compelled to follow *Guzman* and to construe *Zadvydas* narrowly.

### D. Application to Petitioner

█ Here, even though Petitioner was present in the country and held a job pursuant to a work visa, he never "entered" the country and was not "admitted" as those terms are defined in IIRIRA and caselaw. Like the petitioners in *Mezei* and *Borrero*, Petitioner has not effected an entry into the United States, and is physically present only because he was paroled into the country by the INS. *Borrero*, 325 F.3d at 1008. "Parole does not constitute an entry." *Id.* (citing 8 U.S.C. §§ 1101(a)13(A)-(B) and 1182(d)5(A)).

█ Accordingly, *Zadvydas'* narrow holding does not apply to inadmissible aliens such as Petitioner, and his continued detention, so long as he has the opportunity for periodic parole reviews, does not offend due process. *See Guzman*, 130 F.3d at 66 ("We note that Guzman has regularly been given an opportunity to plead his case under the Cuban Review Plan, which provides for the annual evaluation of detainees to reassess their eligibility for parole").[6]

The law is found to require this result, as discussed herein, but it seems anomalous that Petitioner can, lawfully, be detained, theoretically forever, due to the entry fiction as to his presence within the United States and the impasse with Cuba, which refuses to take him back.

### III. Conclusion

For the reasons discussed herein, Petitioner's petition for writ of habeas corpus [Doc. No. 3] is **denied**.

SO ORDERED.

**6.** Here, although Petitioner seeks immediate release, he did not appeal the IJ's order of removal with the BIA, and does not indicate that he has been denied periodic reviews. *See e.g.* 8 C.F.R. § 241.4. *See also Zadvydas*, 533 U.S. at 724, 121 S.Ct. 2491 (Kennedy, J., dissenting) ("the aliens in the instant cases have notice, constructive or actual, that the INA imposes as a consequence of the commission of certain crimes ... the possibility of continued detention in cases where deportation is not immediately feasible").