Patrick J. Schiltz, United States District Judge
Petitioner Jamal A. is an inadmissible alien who has been held in custody by the Bureau of Immigration and Customs Enforcement ("ICE") for over 19 months. Jamal filed this habeas action pursuant to 28 U.S.C. § 2241, seeking release from custody. In a Report and Recommendation ("R & R") dated August 14, 2018, Magistrate Judge Becky R. Thorson recommended that Jamal's application be denied. Jamal objected to the recommendation. Based on a de novo review of the R & R, see 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72(b), the Court sustains Jamal's objection and orders that Jamal be provided with a bond hearing before an immigration judge ("IJ") no later than February 22, 2019.
I. BACKGROUND
Jamal is a citizen of Somalia who fled to the United States in 2001. ECF No. 1 at 5; ECF No. 8-1 at 2-3. Jamal was granted asylum and then later was granted status as a lawful permanent resident ("LPR"). ECF No. 8-1 at 3. In 2015, Jamal was convicted of wire fraud and sentenced to eight months in prison. ECF No. 11 at 2. After being released from prison, Jamal fled to Canada, ECF No. 1 at 9; ECF No. 11 at 2, but Canada forced him to return to *857 the United States, ECF No. 8-1 at 2. When Jamal tried to reenter the United States on June 6, 2017, ICE detained him and initiated removal proceedings. See ECF No. 8-1 at 1-4.[2]
As a general matter, an LPR who leaves the United States and then tries to reenter the country-like an American citizen who leaves the country and then returns-is "not ... regarded as seeking an admission into the United States." 8 U.S.C. § 1101(a)(13)(C). But LPRs such as Jamal who commit crimes of moral turpitude before leaving the United States are treated as arriving aliens when they attempt to reenter. See § 1101(a)(13)(C)(v).[3] An arriving alien who is not "clearly and beyond a doubt" entitled to admission must be detained pending removal proceedings. § 1225(b)(2)(A). Under these provisions, then, Jamal's detention was mandatory, as he was an arriving alien who did not "clearly and beyond a doubt" qualify for admission into the United States. See ECF No. 8-1 at 2; ECF No. 8-2 at 1; Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 845, 200 L.Ed.2d 122 (2018) (holding that § 1225(b)(2) "mandate[s] detention of aliens" not "clearly and beyond a doubt" entitled to admission).
Jamal now asks this Court to order his release. His habeas petition includes claims under § 1225(b), the Fourth Amendment, and the Due Process Clause of the Fifth Amendment. The Court dismisses the statutory and Fourth Amendment claims,[4] but grants relief on the Due Process claim.
II. MERITS
The parties agree that the Due Process Clause places some limitation on detention under § 1225(b)(2)(a), see ECF No. 14 at 4, but the parties disagree about the scope of that limitation. Much of the parties' briefing focuses on whether arriving aliens detained under § 1225(b)(2)(A) are entitled to less protection under the Due Process Clause than criminal aliens detained under § 1226(c). The government argues that aliens detained under § 1225(b)(2)(A) should receive less protection because they are treated as though they are being detained outside the United States by virtue of the "entry fiction."[5] See ECF No. 14 at 2-7. Jamal argues that the two categories of detained aliens should *858 receive identical protection. ECF No. 12 at 4.
The Court is inclined to agree with the government that arriving aliens detained under § 1225(b)(2)(A) receive less robust due-process protection than criminal aliens detained under § 1226(c). "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas v. Davis , 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Certain constitutional safeguards "available to persons inside the United States" are simply "unavailable to aliens outside of our geographic borders." Id. By law, arriving aliens are considered "outside of our geographic borders" even if they physically present in the United States (say, standing at a checkpoint at the Minneapolis-St. Paul International Airport). See Aracely, R. v. Nielsen , 319 F.Supp.3d 110, 144 (D.D.C. 2018) (stating that "arriving aliens" are "considered under the law to have never entered the United States" even if they are physically present within United States borders); see also Ibragimov v. Gonzales , 476 F.3d 125, 134 (2d Cir. 2007) (explaining that arriving aliens physically present in the United States "nevertheless remain constructively detained at the border ... while their status is being resolved by immigration officials"). The Court therefore agrees with the government that an arriving alien is "entitled to lesser protections than one who has already entered." See Damus v. Tsoukaris , No. 16-CV-0933, 2016 WL 4203816, at *4-5 (D.N.J. Aug. 8, 2016), abrogation recognized by Otis V. v. Green , No. 18-CV-0742, 2018 WL 3302997 (D.N.J. July 5, 2018).
That said, it is not clear what, if anything, turns on this dispute, at least as a practical matter. In theory, if aliens detained under § 1225(b)(2)(A) receive less protection under the Due Process Clause than aliens detained under § 1226(c), then the former can be detained somewhat longer than the latter. Cf. id. at *4 (arriving aliens detained at the border have "no right of entry into this country" and thus "may be held for a greater length of time before [their] continued detention raises Due Process concerns"). But everyone seems to agree that, under the Due Process Clause, neither group of aliens can be detained indefinitely (at least without some kind of showing that they are likely to flee or harm the community). And in deciding whether an alien's continued detention would violate the Due Process Clause, most courts seem to apply pretty much the same factors-regardless of whether the court agrees that aliens detained under § 1225(b)(2)(A) receive less protection than aliens detained under other provisions. See, e.g. , Brissett v. Decker , 324 F.Supp.3d 444 (S.D.N.Y. 2018) (applying the reasonableness factors used in the context of § 1226(c) to detention under § 1225(b)(2)(A) ).
Turning to those factors: The undersigned recently identified and explained the factors that most courts consider when weighing the lawfulness of the continued detention of an alien under the Due Process Clause. See Muse v. Sessions , No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052 (D. Minn. Sept. 18, 2018). Other judges of this District have recently done likewise. See, e.g. , Mohamed v. Sec'y, Dep't of Homeland Sec. , No. 17-CV-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), report and recommendation adopted , 2018 WL 2390132 (D. Minn. May 25, 2018) ; Tindi v. Sec'y, Dep't of Homeland Sec. , No. 17-CV-3663 (DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018). These factors include (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions *859 of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. Muse , 2018 WL 4466052, at *3.
Most of these factors weigh in favor of granting relief to Jamal:
First , courts consider the length of detention. How long detention has lasted "is critical to the due-process inquiry." Id. at *4. It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released.
Jamal has been in ICE custody over 19 months. See ECF No. 8 at 1-2. This is a very long time, even for an alien who may be entitled to less protection under the Due Process Clause than an alien detained under § 1226(c) or another provision of the immigration laws. See, e.g. , Salazar v. Rodriguez , No. 17-CV-1099, 2017 WL 3718380, at *6 (D.N.J. Aug. 29, 2017) (finding detention lasting over a year constitutionally unreasonable), appeal docketed, Salazar v. Tsoukaris , No. 17-3367 (3d Cir. Oct. 31, 2017); Mancia-Salazar v. Green , No. 17-CV-0147, 2017 WL 2985392, at *5 (D.N.J. July 13, 2017) (finding detention lasting nearly 18 months constitutionally unreasonable), abrogation recognized by Otis V. , 2018 WL 3302997. The length of Jamal's detention strongly favors granting him a bond hearing. See Perez v. Decker , No. 18-CV-5279, 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018) (holding that a detention under § 1225(b)(2)(A) longer than nine months was "unreasonable" and that the alien's due-process rights "require[d] him to be afforded ... an individualized bond hearing").
Second , courts consider how long the detention will likely continue in the absence of judicial relief. Courts examine the "anticipated duration of all removal proceedings"-including administrative and judicial appeals-when estimating how long detention will last. Muse , 2018 WL 4466052, at *5.
This factor also strongly supports granting relief to Jamal. In November 2017, an IJ granted Jamal deferral of removal under the Convention Against Torture ("CAT") on the basis of his clan affiliation. ECF No. 8-4 at 2, 8-13. The Board of Immigration Appeals ("BIA") reversed the IJ's decision in June 2018, finding that Jamal was not entitled to CAT relief on the basis of his clan affiliation, but remanding the case to the IJ to determine whether Jamal was entitled to relief on another basis. ECF No. 8-5 at 1 (notice of appeal); ECF No. 10-1 at 2-5 (BIA ruling). Jamal was scheduled to have a follow-up hearing before an IJ in September 2018. The Court has not been informed whether that hearing took place, but, if the IJ denies relief, Jamal will almost surely appeal the IJ's decision to the BIA. ECF No. 13 at 1.
Notably, immigration courts have been struggling to keep pace with the high volume of removal proceedings-and that was before many of those courts were shuttered by the ongoing government shutdown. See East Bay Sanctuary Covenant v. Trump , 909 F.3d 1219, 1230 (9th Cir. 2018) (stating that immigration courts have a "total backlog of nearly 800,000 removal cases"). Given this backlog, given Jamal's right to appeal an adverse decision of the IJ to the BIA, and given Jamal's right to ask the Eighth Circuit to review an adverse decision of the BIA, Jamal might well be detained for two years or longer before he gets a final decision regarding his removal.
*860 Third , courts consider the conditions of the alien's detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Jamal's detention. Sajous v. Decker , No. 18-CV-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." Muse , 2018 WL 4466052, at *5.
This factor favors Jamal because ICE is housing him at the Sherburne County Jail-a facility that houses not only federal detainees, but also inmates who are serving state prison sentences. ECF No. 9 at 1 n.1. Jamal's confinement at the Sherburne County Jail is "indistinguishable from penal confinement." Muse , 2018 WL 4466052, at *5.
Fourth , courts consider the nature and extent of any delays in the removal proceedings caused by the alien. Courts should be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." Ly v. Hansen , 351 F.3d 263, 272 (6th Cir. 2003). This factor favors granting relief because Jamal has not engaged in dilatory tactics.
Fifth , courts consider the nature and extent of any delays in the removal proceedings caused by the government. See Sajous , 2018 WL 2357266, at *11 ("Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials."). This factor favors continued detention because the government has not engaged in dilatory tactics.
Finally , courts consider the likelihood that the proceedings will culminate in a final removal order. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." Muse , 2018 WL 4466052, at *6. This factor does not weigh in favor of either party because the Court does not have sufficient information to determine whether Jamal is likely to be removed.
In sum, four of these six factors weigh (two strongly) in favor granting relief, one weighs against granting relief, and one is neutral. Accordingly, the Court holds that continuing to detain Jamal without giving him a bond hearing would violate his rights under the Due Process Clause. The Court will order that an IJ conduct a bond hearing at which "the parties must be allowed to present evidence and argument about whether [Jamal] is a danger to the community and whether [Jamal] is likely to flee if he is not detained." Id. at *6.[6]
ORDER
Based on the foregoing, and on all of the files, records, and proceedings herein, the Court SUSTAINS Jamal's objection [ECF No. 12] and DECLINES TO ADOPT the R & R [ECF No. 11]. IT IS HEREBY ORDERED THAT:
1. Jamal's application for a writ of habeas corpus under 28 U.S.C. § 2241 *861 [ECF No. 1] is GRANTED IN PART with respect to Count III (the Due Process claim).
2. No later than February 22, 2019, an immigration judge must provide Jamal with a bond hearing. At this hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Jamal from fleeing.
3. Count I of the petition is DISMISSED WITH PREJUDICE, and Count II of the petition is DISMISSED WITHOUT PREJUDICE.
LET JUDGMENT BE ENTERED ACCORDINGLY.

Although ICE claimed to have detained Jamal under 8 U.S.C. § 1226(c), see ECF No. 8 at 2, both parties agree that his detention is instead governed by § 1225(b)(2)(A), ECF No. 1 at 1 n.1; ECF No. 7 at 4. Judge Thorson agreed with the parties that § 1225(b)(2)(A) applies. ECF No. 11 at 6 n.4.

Jamal does not dispute that he committed a crime of moral turpitude. See ECF No. 1 at 10; ECF No. 11 at 6 n.3.

Jamal claims that 8 U.S.C. § 1225(b)(2)(A) does not authorize his prolonged detention because-under the doctrine of constitutional avoidance-§ 1225(b)(2)(A) should be interpreted to include a reasonableness limitation. See ECF No. 1 at 18-19. The Court rejects that claim, as it is plainly foreclosed by Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 842, 200 L.Ed.2d 122 (2018). Jamal also claims that his continued detention violates the Fourth Amendment. The Court dismisses that claim as moot, given that "[n]either party has argued-and the Court is unaware of any authority suggesting-that [Jamal] is entitled to broader relief under the Fourth Amendment than under the Due Process Clause." Muse v. Sessions , No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *1 n.1 (D. Minn. Sept. 18, 2018).

Under the "entry fiction," "although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." Napoles v. I.N.S. , 278 F.Supp.2d 272, 275 (D. Conn. 2003) (citation omitted).

Nothing in this order is intended to suggest what standard of proof (preponderance of the evidence, clear and convincing evidence, proof beyond a reasonable doubt, or something else) will apply at the bond hearing. And nothing in this order is intended to suggest whether it is Jamal or the government who must meet that burden. Those matters are left for the IJ to determine in the first instance.