**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ROLANDO MORENO SIERRA,

      Petitioner-Appellant,

v.

IMMIGRATION &
NATURALIZATION SERVICE;
BRYAN T. GUSTAFSON; J.C.
HIGGINS,

      Respondents-Appellees.

No. 99-1379

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-K-518)**

**Submitted on the briefs:**[*]

Rolando Moreno Sierra, pro se.

Michael G. Katz, Federal Public Defender, and James P. Moran, Assistant Federal
Public Defender, Denver, Colorado, for Petitioner-Appellant.

Mark C. Walters, Assistant Director, and Loreto S. Geisse, Attorney, Office of
Immigration Litigation, Department of Justice, Washington, D.C.; and Michael E.

---

[*]After examining the briefs and appellate record, this panel had determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).  The case is
therefore submitted without oral argument.  We also deny Sierra's pro se "Motion
to Suppress Immigration and Naturalization Service Brief on Ground of Perjury."

Hegarty, Assistant United States Attorney, Denver, Colorado, for Respondents-Appellees.

Before **EBEL**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

**EBEL**, Circuit Judge.

Rolando Moreno Sierra is an excludable alien[1] who is currently detained in a federal prison pending Cuba's decision to allow him back into that country. In 1998, he was recommended for parole, but he was involved in a prison fight before his release and his parole was subsequently withdrawn. He filed a pro se petition for a writ of habeas corpus, arguing that the Due Process Clause entitles him to a hearing on the withdrawal of parole and an opportunity to appeal the disciplinary conviction for fighting. The district court dismissed his petition on the merits. We hold that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (codified as amended in scattered sections of 8 U.S.C.), did not deprive us of jurisdiction to consider Sierra's petition. On the merits, we find that Sierra has received the process he is due and we therefore AFFIRM.

---

[1]An "excludable" alien is one who is ineligible for admission to the United States. United States v. Landeros-Mendez, 206 F.3d 1354, 1355 n.1 (10th Cir. 2000). The terminology has since been changed; such aliens are now referred to as "inadmissible." Id.

## BACKGROUND

Sierra is a Cuban who came to the United States during the 1980 Mariel boat lift. He was paroled into the United States. Over the next twelve years, he was convicted of several crimes, including theft. Because of this criminal history, the Immigration and Naturalization Service (INS) denied his application to become a lawful permanent resident in 1987. In 1992, an immigration judge denied Sierra's application for asylum and ordered that he be excluded and deported. Sierra's appeal of this decision was summarily dismissed by the Board of Immigration Appeals. Because Cuba will not accept him back, Sierra has been detained in federal prisons for most of the last eight years.

Mariel Cubans who are being detained have their cases reviewed every year to determine whether they should be paroled. See 8 C.F.R. § 212.12(g)(2). A Cuban Review Panel makes a recommendation to the Associate Commissioner for Enforcement of the INS, who has the discretion to approve parole. See id. § 212.12(b), (d). This approval may be withdrawn prior to release if "the conduct of the detainee, or any other circumstance, indicates that parole would no longer be appropriate." Id. § 212.12(e).

Sierra was denied parole in 1992 because of his "tendency to engage in criminal activities as reflected by [his] extensive criminal record." In 1994, he was released to a halfway house, but his parole was revoked six months later

because he had violated its conditions. He was denied parole again in 1995, 1996, and 1997. While detained in prison, he was disciplined for numerous incidents, such as insolence, refusing an order, threatening others, and minor assaults.

On July 28, 1998, the Review Board recommended that he be paroled to a halfway house, noting that he had no disciplinary incidents in 1998. Before his release, however, he was cited for fighting. After a disciplinary hearing, a discipline hearing officer rejected Sierra's argument that he was acting in self-defense and upheld the charge. Sierra claims he has administratively appealed the discipline entered as a result of this hearing. Because of the fighting incident and apparently while Sierra's disciplinary appeal was pending, the Associate Commissioner for Enforcement, without a hearing, withdrew approval for Sierra's parole.

Sierra filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the district court. In his petition, he argued: (1) he was entitled to a hearing on the parole withdrawal and (2) the Cuban Review Panel should not have withdrawn his parole while his appeal of the disciplinary decision was pending. The district court denied the petition on the merits, finding that the Due Process Clause did not entitle Sierra to a hearing on his parole withdrawal or the right to await the

outcome of his appeal of the disciplinary hearing before the parole withdrawal proceeding continued.

**DISCUSSION**

I. Jurisdiction

We have an independent duty to examine issues relating to our jurisdiction. Ho v. Greene, 204 F.3d 1045, 1050 (10th Cir. 2000). Accordingly, we appointed counsel to represent Sierra and requested supplemental briefing on the federal courts' subject-matter jurisdiction. We now hold that IIRIRA did not strip the federal courts of jurisdiction to consider Sierra's habeas petition.[2]

IIRIRA added a provision to federal law restricting court review of discretionary decisions in the immigration context:

---

[2]Under pre-IIRIRA law, it was established that immigration parole decisions could be challenged through writs of habeas corpus. See, e.g., Marczak v. Greene, 971 F.2d 510, 515-16 (10th Cir. 1992). The parties agree that IIRIRA applies to this case, and for the purposes of this appeal we assume it does, although the matter is not free from doubt. Most provisions of IIRIRA do not apply to "an alien who is in exclusion or deportation proceedings before" April 1, 1997. See 8 U.S.C. § 1101 note (Effective Dates). Sierra was ordered excluded in an exclusion proceeding held in 1992; literally, then, he was in exclusion proceedings "before" April 1, 1997. One appellate court, however, has applied IIRIRA to a situation like here where an alien's order of exclusion or deportation became final before April 1, 1997. See Zadvydas v. Underdown, 185 F.3d 279, 286-87 & n.7 (5th Cir. 1999), rev'd on other grounds, 121 S. Ct. 2491 (2001). Without deciding the issue, we simply accept the application of IIRIRA pursuant to the agreement of the parties and consider whether it deprived us of jurisdiction.

Notwithstanding any other provision of law, no court shall have jurisdiction to review –

. . .

(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under [asylum law].

8 U.S.C. § 1252(a)(2)(B).

There are two reasons why this provision does not apply in this case. First, this statute addresses only "jurisdiction to review." In the immigration context, "jurisdiction to review" has a meaning distinct from "habeas corpus," and a statute stripping courts of the former does not also deprive them of the ability to hear a habeas challenge. INS v. St. Cyr, 121 S. Ct. 2271, 2285 (2001). The Supreme Court in St. Cyr concluded that the phrases "judicial review" and "jurisdiction to review" found in § 1252(a)(1) and (a)(2)(C) preclude only "full, nonhabeas review," id. at 2286, and we see no reason why the same phrase in § 1252(a)(2)(B)(ii) should have any greater reach. Sierra, accordingly, may proceed through a § 2241 habeas petition, as he has done in this case.

Second, § 1252(a)(2)(B)(ii) strips the courts of jurisdiction to review only matters falling within the Attorney General's discretion. Sierra does not seek review of the Attorney General's exercise of discretion; rather, he challenges the constitutionality of the procedures used in his parole proceeding. It is never within the Attorney General's discretion to act unconstitutionally. See Aguilera

- 6 -

v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001) (holding that statutes restricting judicial review of discretionary decisions do not preclude review of challenges to the constitutionality of INS regulations); Ho, 204 F.3d at 1052 (holding that § 1252(a)(2)(B)(ii) does not bar challenges to the constitutionality of immigration statutes), overruled on other grounds by Zadvydas v. Davis, 121 S. Ct. 2491 (2001); cf. Zadvydas, 121 S. Ct. at 2497-98 (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

The other jurisdictional provision of IIRIRA that is arguably implicated is found in § 1226, which discusses the detention of aliens pending a decision on whether they are to be removed.  It is not clear that this section applies to Sierra, who has already received a decision that he is to be removed.  Cf. Ho, 204 F.3d at 1052 n.4 ("Arguably . . . § 1226(e) applies only to discretionary decisions made by the Attorney General pending the entry of a final removal order.")  Assuming it applies, it does not deprive us of jurisdiction.  Section 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Although the wording of this section varies slightly from those sections specifically discussed by the St. Cyr Court in that it does not use the phrases

"judicial review" or "jurisdiction to review," we find this difference unimportant. Section 1226(e), like § 1252, does not explicitly mention habeas review or § 2241. "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." St. Cyr, 121 S. Ct. at 2278-79. We hold that § 1226(e) does not "speak[] with sufficient clarity to bar jurisdiction pursuant to the general habeas statute." Id. at 2286.

None of the other jurisdictional provisions of IIRIRA appear to apply to this case. We therefore hold that we have jurisdiction to address Sierra's § 2241 habeas petition on the merits. We review de novo the district court's dismissal of the petition. Ho, 204 F.3d at 1052.

II. Merits

Sierra challenges the procedures used to withdraw his parole under the Mariel Cuban regulations, 8 C.F.R. § 212.12. Specifically, he argues that he was entitled to a hearing on the withdrawal and a chance to await the appeal of his disciplinary conviction. Sierra's procedural due process arguments face a high hurdle.

Although he has been physically present in the United States for more than twenty years, Sierra is "legally considered to be detained at the border and hence

as never having effected entry into this country."  Gisbert v. U.S. Attorney Gen.,

988 F.2d 1437, 1440 (5th Cir.), amended by 997 F.2d 1122 (5th Cir. 1993).  The

Due Process Clause does not provide him a liberty interest in being released on

parole.  See Ho, 204 F.3d at 1060.  Ordinarily, then, "[w]hatever the procedure

authorized by Congress is, it is due process as far as an alien denied entry is

concerned."  United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544

(1950).[3]

The government asserts that Sierra's continued detention is authorized by

the pre-IIRIRA version of 8 U.S.C. § 1226(e) (repealed effective April 1, 1997).

That section provided:

> (1)  Pending a determination of excludability, the Attorney General shall take into custody any alien convicted of an aggravated felony . . . .
> (2) Notwithstanding any other provision of this section, the Attorney General shall not release such felon from custody unless the Attorney General determines that the alien may not be deported because [the alien's country of origin denies or unduly delays acceptance of the alien's return].
> (3) If the determination described in paragraph (2) has been made, the Attorney General may release such alien only after –
>   (A)  a procedure for review of each request for relief under this subsection has been established,

---

[3]The above rule applies to procedural due process challenges such as Sierra's.  This case does not involve, and we do not address, a substantive due process challenge to congressional legislation.  Cf., e.g., Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1387 (10th Cir. 1981) ("Surely Congress could not order the killing of Rodriguez-Fernandez and others in his status on the ground that Cuba would not take them back and this country does not want them.").

> (B) such procedure includes consideration of the severity of the felony committed by the alien, and
>
> (C) the review concludes that the alien will not pose a danger to the safety of other persons or to property.

We have interpreted former § 1226(e) to authorize continued detention of an excludable alien who has been convicted of an aggravated felony after the entry of a final order of exclusion. Ho, 204 F.3d at 1055.

As noted above, former § 1226(e) was repealed effective April 1, 1997. The most similar provision in current law appears to be 8 U.S.C. § 1231(a). Under this provision, an inadmissible alien such as Sierra must generally be removed from this country within a short period of time, ninety days under current law. See 8 U.S.C. § 1231(a)(1)(A). If the alien is not removed within this period, he is "subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). In particular, certain criminals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision." Id. § 1231(a)(6) (emphasis added).

We need not decide whether former § 1226(e) or current § 1231(a)(6) governs Sierra's detention. Cf. Ho, 204 F.3d at 1053 n.5 (noting that the result would be the same under either statute). Both statutes commit the decision whether to parole an alien to the discretion of the Attorney General. The parties have not called our attention to any other applicable statutory provisions requiring the sorts of procedures Sierra demands.

The Attorney General has delegated the authority for parole decisions for Mariel Cubans to the Associate Commissioner for Enforcement as provided by 8 C.F.R. § 212.12(b).  The parole decision, "while invested with considerable discretion, is not entirely immune from judicial review." Marczak v. Greene, 971 F.2d 510, 515 (10th Cir. 1992).[4]  Under Marczak, however, our habeas review is limited to determining whether INS officials "have articulated some individualized facially legitimate and bona fide reason for denying parole, and some factual basis for that decision in each individual case." Id. at 518.

In Sierra's case, the Marczak standard is easily met.  The Associate Commissioner for Enforcement explained that Sierra's parole was being withdrawn because he had been cited for fighting.  This is a facially legitimate reason for withdrawing parole.  See 8 C.F.R. § 212.12(e) (stating that parole may be withdrawn if "the conduct of the detainee . . . indicates that parole would no longer be appropriate"); see also id. § 212.12(d)(2) (including as criteria for the parole determination whether the detainee is nonviolent and likely to remain

---

[4]Marczak involved former § 1182(d)(5)(A), which provided that "[t]he Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States."  In addition, it concerned the granting of parole in the first instance rather than its withdrawal.  We are not persuaded that either difference is material in this context.

nonviolent). The incident report and the hearing officer's findings provided some factual basis for the fighting charge.

Neither the statutes nor the governing regulations require a hearing on parole withdrawal. Neither require affording Sierra an opportunity to appeal his fighting conviction before a decision on the parole withdrawal. The lack of a hearing and opportunity to await the disciplinary appeal therefore do not deny Sierra the due process of law to which he is entitled. We therefore AFFIRM the district court's decision.

III. Other Issues

In his appellate briefs, Sierra raises several other issues. He argues that (1) his conditions of confinement violate the Eighth Amendment; (2) he is not an illegal alien because he was invited to this country by President Carter; and (3) his indefinite detention violates his constitutional rights. These issues were not raised in his habeas petition before the district court, and we do not consider them for the first time on appeal. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992). We note also that the second argument could have been raised in his earlier exclusion proceeding. The order of exclusion is now final, and the determinations made in that proceeding are binding on us.

## CONCLUSION

We AFFIRM the district court's dismissal of Sierra's habeas petition.