Gilberto MARTINEZ–VAZQUEZ, Petitioner–Appellee,

v.

IMMIGRATION and NATURALIZATION SERVICE; John Ashcroft, Attorney General; Robert S. Coleman, Jr., Respondents–Appellants.

No. 03–35026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2003.

Filed Oct. 1, 2003.

---

Thomas W. Hillier, II, Jay W. Stansell, and Michelle Sweet, Federal Public Defenders, Seattle, WA, for the Petitioner–Appellee.

John Andre, United States Department of Justice, Washington, DC, for the Respondents–Appellants.

Before ALARCÓN, GOULD, and CLIFTON, Circuit Judges.

## OPINION

GOULD, Circuit Judge:

We must decide whether former 8 U.S.C. § 1226(e)—a statutory provision Congress largely repealed[1] in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")— authorizes the Immigration and Natural- ization Service to continue detaining an inadmissible alien. We conclude that former § 1226(e) does not authorize the alien's detention, so we affirm the district court's grant of the alien's petition for writ of habeas corpus.

## I

Petitioner-appellee Gilberto Martinez– Vazquez ("Martinez") is a Cuban citizen who arrived in the United States in 1980 as part of the "Mariel Boatlift." He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), which authorizes the INS to parole inadmissible aliens at its discretion. See id. Between 1981 and 1992, Martinez was convicted of six felonies. In September 1992, Martinez escaped from custody while serving a six-year sentence for burglary and possession of cocaine. Because of Martinez's felony convictions, the INS revoked his parole and commenced removal proceedings. Martinez was apprehended three months later and was again arrested for possession of cocaine. Martinez was sentenced to five years for the cocaine possession conviction, and to a year and a day for having escaped from Dade County Jail. On May 11, 1993, Martinez was ordered removed to Cuba. Martinez entered INS custody in 1995, after serving approximately three years of his criminal sentence in state prison.

The INS was unable to effectuate Martinez's removal order because Cuba refused to accept his return.[2] Consequently, Martinez remained in INS custody until his case was reviewed by a Cuban Review

---

1. Under the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), IIRIRA repealed and replaced pre-IIRIRA law except for proceedings ongoing as of IIRIRA's effective date.

2. The United States has been discussing the return of inadmissible aliens with Cuban authorities for almost two decades with little progress. According to the record, the United States is still detaining about 1,750 removable Mariel Cubans because Cuba will not accept them.

Panel and he was released on parole in 1996.[3] In 2000, Martinez was convicted of another drug offense. He served a 27–month sentence in state prison and again entered INS custody in October 2001 to await removal to Cuba pursuant to the 1993 removal order.

Martinez filed a habeas corpus petition under 28 U.S.C. § 2241 in the district court on January 18, 2002, arguing that his continued detention was improper under the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), which interpreted 8 U.S.C. § 1231(a)(6) not to authorize indefinite detention of removable aliens. *Zadvydas*, 533 U.S. at 699, 121 S.Ct. 2491. The district court denied Martinez's habeas petition, concluding that the limitation on indefinite detention in § 1231(a)(6), explained by the *Zadvydas* Court, did not apply to inadmissible aliens.[4]

In August 2002, we decided *Xi v. INS*, 298 F.3d 832 (9th Cir.2002), holding to the contrary that *Zadvydas's* reasoning and statutory interpretation applied also to inadmissible aliens. *Id.* at 840. Martinez moved for reconsideration, asserting that the district court's refusal to apply *Zadvydas* to his detention was inconsistent with our *Xi* holding. The district court found that *Xi* was controlling and reversed its prior decision, granting Martinez's habeas petition.

The INS filed a motion for reconsideration, maintaining that *Zadvydas* and *Xi* were not controlling here because Martinez's detention after the final removal order began before IIRIRA's effective date. The INS argued that Martinez's continued detention is authorized by pre-IIRIRA statute, not by § 1231(a)(6), the statute interpreted in *Zadvydas* and *Xi* to prohibit indefinite detention.[5] The district court denied the INS's motion for reconsideration, finding that the INS's "assertion that a repealed section of the Immigration and Nationalization Act ('INA') governs [Martinez's] current detention to be untenable." The INS appealed the district court's order denying its motion for reconsideration.[6]

---

**3.** The Cuban Review Plan, 8 C.F.R. §§ 212.12–13, established a parole review program for removable "Mariel Cubans." Detainees are reviewed annually by a panel that assesses their suitability for parole. Paroled aliens remain subject to their final removal orders.

**4.** The district court held, and the INS does not dispute on appeal, that Martinez's detention constituted "indefinite detention" as defined by the Supreme Court in *Zadvydas*, because Martinez had spent more than six months in INS custody (Martinez spent ten months in custody before the district court ordered his release) and there was no significant likelihood of his removal in the reasonably foreseeable future. 533 U.S. at 701, 121 S.Ct. 2491.

The INS on appeal does not challenge the district court's conclusion, consistent with *Zadvydas* and *Xi*, that § 1231(a)(6)—the IIRIRA provision authorizing post-removal-order detentions—does not authorize Martinez's detention. Instead of addressing interpretation of § 1231(a)(6), the INS rests its argument for continued detention of Martinez on the theory he can be held under former § 1226(e).

**5.** The district court had discretion not to consider the INS's new argument, advanced for the first time in its motion for reconsideration, that pre IIRIRA law authorizes Martinez's detention, *see Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1141 n. 6 (9th Cir.1999). But the district court exercised its discretion to consider the argument and held, as the basis for denying the motion for reconsideration, that the argument was incorrect.

**6.** Martinez advanced a constitutional argument in the district court, and the district court rejected it. Martinez has not advanced that constitutional argument on appeal, arguing only that his detention is not authorized by statute. We therefore need not and do not address the constitutionality of Martinez's continued detention.

## II

■ We review de novo the district court's decision to grant Martinez's petition for writ of habeas corpus. *See Taniguchi v. Schultz*, 303 F.3d 950, 955 (9th Cir.2002); *Zitto v. Crabtree*, 185 F.3d 930, 931 (9th Cir.1999).

The propriety of the INS's continued detention of Martinez depends on whether former 8 U.S.C. § 1226(e) (1994)[7] authorizes Martinez's detention, for we already have held in *Xi* that the new post-IIRIRA detention statute—8 U.S.C. § 1231(a)(6) (2003)[8]—does not authorize the INS to detain inadmissible aliens indefinitely.

The INS ordered Martinez removed before Congress's enactment of IIRIRA at a time when former § 1226(e) granted the Attorney General authority to detain inadmissible aliens. *See Alvarez–Mendez v. Stock*, 941 F.2d 956, 961(9th Cir.1991), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). IIRIRA replaced former § 1226(e) with new § 1231(a)(6) and created a "transition rule" that governs application of IIRIRA to aliens in proceedings begun before IIRIRA's effective date.

The transition rule, IIRIRA § 309(c)(1), provides

> [I]n the case of an alien who is in exclusion or deportation proceedings before the title III–A effective date [April 1, 1997]—(A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

Thus, § 309(c)(1) instructs courts to apply some pre-IIRIRA law to proceedings begun before April 1, 1997.

■ Section 309(c)(1) does not preserve former § 1226(e) as a source of authority to detain aliens. Section 309(c)(1) preserves the pre-IIRIRA statutory landscape for an alien "who *is in . . . proceedings*" begun before the effective date, providing that these "*proceedings . . . shall continue* to be conducted" under pre-IIRIRA law (emphasis added). The implication is that the rule was intended to preserve pre-IIRIRA procedures for ongoing "proceedings" initiated under pre-IIRIRA law. Martinez's continued detention is not an ongoing "proceeding." *See*

---

7.  Former § 1226(e) stated
    (1) Pending a determination of excludability, the Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien . . .
    (2) Notwithstanding any other provision of this section, the Attorney General shall not release such felon from custody unless the Attorney General determines that the alien may not be deported . . .
    (3) If the determination described in paragraph (2) has been made, the Attorney General may release such alien only after—
    (A) a procedure for review of each request for relief under this subsection has been established,
    (B) such procedure includes consideration of the severity of the felony committed by the alien, and
    (C) the review concludes that the alien will not pose a danger to the safety of other persons or to property.

Because we conclude that IIRIRA repealed former § 1226(e)'s grant of authority to the INS to detain aliens, we need not and do not reconsider our *Barrera–Echavarria v. Rison* holding to determine whether the Supreme Court's *Zadvydas* reasoning would compel us to interpret former § 1226(e) not to authorize indefinite detentions. *See Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1445 (9th Cir.1995) (holding, before the Supreme Court's *Zadvydas* decision, that former § 1226(e) authorized indefinite detentions).

8.  Section 1231(a)(6) states, "An alien ordered removed who is inadmissible . . . removable . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to . . . supervision."

*Richardson v. Reno,* 180 F.3d 1311, 1317(11th Cir.1999) ("detention always has been considered a separate and distinct matter from a removal proceeding"); *see also* BLACK'S LAW DICTIONARY 1221 (7th ed.1999) (defining proceeding as "[the] regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"). Consequently, § 309(c)(1) does not preserve former § 1226(e) as authority to detain Martinez.

The Supreme Court interpreted § 309(c)(1) in precisely this manner in *St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, concluding that § 309(c)(1) shields pre-IIRIRA proceedings only from the application of new *procedural* laws. The Court stated:

> Section 309(c)(1) is best read as merely setting out the *procedural* rules to be applied to removal proceedings pending on the effective date of the statute.[9] *Id.* at 318, 121 S.Ct. 2271.

Thus, the transition rule does not preserve former § 1226(e) insofar as it authorizes detention, a substantive matter.[10]

Our conclusion that § 309(c)(1) does not preserve former § 1226(e)'s grant of authority to detain aliens is consistent with the Supreme Court's treatment of former § 1226(e) in *Zadvydas.* The habeas petitioner in *Zadvydas* was issued a final removal order in 1994, before IIRIRA's enactment. Even though the petitioner's final removal order was entered before IIRIRA, the Court interpreted new § 1231(a)(6). *See Zadvydas,* 533 U.S. at 682, 121 S.Ct. 2491. This treatment of § 1231(a)(6) by the Supreme Court reinforces our conclusion that it is § 1231(a)(6) that now must be considered to authorize or constrain any detention after a removal order. *See id.* (interpreting § 1231(a)(6) not to authorize indefinite detention and reversing a denial of a habeas petition on that ground).[11]

---

**9.** The Supreme Court drew support for its assertion from a Conference Report explaining that "[Section 309(c)] provides for the transition to *new procedures* in the case of an alien already in exclusion or deportation proceedings on the effective date." H.R. Conf. Rep. No. 104–828, p. 222 (1996) (emphasis added).

**10.** Addressing an issue similar to that presented in this case, but arising in a different procedural context and with some different arguments of parties, another panel of our circuit recently provided a detailed analysis of § 309(c)(1) and its application. *Marquez v. INS,* 2003 WL 22156287 (9th Cir. Sep.19, 2003). We agree fully with this analysis and our reasoning and holding today are consistent with that of the *Marquez* panel.

**11.** The INS attempts to distinguish *Zadvydas* by noting that the government treats pre-IIRIRA deportable aliens differently from inadmissible aliens for detention purposes because Congress enacted the Transition Period Custody Rules (codified at IIRIRA § 303(b))—a separate transitional provision regulating the

custody of most criminal deportable aliens. The INS cites four of our sister circuits' decisions as its argued support for its proposition that *Zadvydas* does not affect the INS's ability to indefinitely detain inadmissible Mariel Cubans. *See Borrero v. Aljets,* 325 F.3d 1003 (8th Cir.2003); *Jimenez Rios v. INS,* 324 F.3d 296 (5th Cir.2003); *Hoyte–Mesa v. Ashcroft,* 272 F.3d 989 (7th Cir.2001); *Sierra v. INS,* 258 F.3d 1213 (10th Cir.2001). None of these decisions by our sister courts persuades us to reverse the district court here. The Tenth Circuit in *Sierra* did not reach the question whether former § 1226(e) continues to authorize post-removal-order detentions. *See* 258 F.3d at 1216. And, the Fifth, Seventh, and Eighth Circuits' decisions in *Borrero, Jimenez Rios,* and *Hoyte–Mesa* directly contradict our *Xi* holding by concluding that the Supreme Court's *Zadvydas* reasoning applies only to *deportable* aliens, and not to *inadmissible* aliens like Martinez. *See Borrero,* 325 F.3d at 1007; *Jimenez Rios,* 324 F.3d at 297; *Hoyte–Mesa,* 272 F.3d at 991. In *Xi,* we refused to draw such a distinction and held that the Supreme Court's interpretation of § 1231(a)(6) in *Zadvydas* extended to inadmis-

We reach the same conclusion that the Sixth Circuit reached in *Rosales–Garcia v. Holland*, 322 F.3d 386(6th Cir.2003) (en banc), *cert. denied*, —— U.S. ——, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003), holding that § 309(c) does not preserve former § 1226(e) as authority to detain inadmissible aliens with pre-IIRIRA removal orders. *Id.* at 403. The *Rosales–Garcia* court correctly explained that petitioners were not challenging the legality of their original detention, but rather the INS's authority to detain them indefinitely now. *See id.* at 402.

This same valid point was made by the district court's incisive order in this case, stressing that the court would "not determine the legality of a person's *current* detention under a *repealed* statute." This makes sense to us. Stated another way, the core use of the Great Writ, here by virtue of 28 U.S.C. § 2241, is to grant freedom to a person beseeching the court to exercise its power to end a current detention. And here, § 1231(a)(6)—the statute that now authorizes the INS to detain aliens for a reasonable time—is the applicable statute, not former § 1226(e).[12] *Id.* Thus, *Zadvydas* and *Xi* are squarely applicable. The district court did not err in granting Martinez's petition for a writ of habeas corpus, nor in denying the INS's motion for reconsideration.[13]

**AFFIRMED.**

---

sible aliens. *See Xi*, 298 F.3d at 839. Thus, the precedent urged by the INS is wholly unpersuasive to us, and we are bound to follow *Zadvydas* and *Xi*.

12. We similarly distinguished present detention challenges in *Alvarez–Mendez*, 941 F.2d at 960, noting that a petition for habeas corpus, unlike a claim for illegal detention, involves the legality of an alien's *present* detention and should be analyzed under the current statute. *Id.*

13. The INS cites 8 C.F.R. § 241.4(a)(1) and argues that the regulation is a reasonable agency interpretation, owed *Chevron* defer-

ence, that former § 1226(e) continues to authorize the detention of inadmissible aliens convicted of aggravated felonies. The regulation provides that the review procedures governing custody after a final removal order apply to inadmissible aliens, "including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990 ... codified at 8 U.S.C. § 1226(e)(1) through (e)(3)." 8 C.F.R. § 241.4(a)(1). In our view, the INS is mistaken because the regulation involves application of former § 1226(e)'s custody review "procedures," not its substantive authorization of detentions.