**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 16 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VICTOR MANUEL SUAREZ-
TEJEDA,

    Petitioner - Appellant,

vs.

UNITED STATES OF AMERICA,

    Respondent - Appellee.

No. 02-6341
(D.C. No. 01-CV-96-F)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

    Petitioner-Appellant Victor Suarez-Tejeda appeals the district court's

denial of his writ of habeas corpus. Mr. Suarez-Tejeda is a Mariel Cuban who

has been ordered removed from the United States, yet until recently has remained

in the custody of the Immigration and Naturalization Service ("INS")[1] because

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] On March 1, 2003, the functions of the Immigration and Naturalization
Service were transferred to the newly formed Department of Homeland Security.
See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The
INS no longer exists as a separate agency and has been replaced by three separate
bureaus within the Department of Homeland Security: the Bureau of Immigration

Cuba refuses the return of her citizens. Mr. Suarez-Tejeda filed a petition for habeas relief under 28 U.S.C. § 2241 on November 16, 2000, challenging the constitutionality of his continued detention.

In 2001, the Supreme Court construed a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") that authorizes post-removal-period detention of various groups of aliens, 8 U.S.C. § 1231(a)(6), to include an implicit reasonable time limitation in order to avoid serious constitutional concerns raised by such indefinite detention. Zadvydas v. Davis, 533 U.S. 678, 682 (2001). Mr. Suarez-Tejeda argues that his detention and the procedures applied to his parole review are unconstitutional in light of Zadvydas and Tenth Circuit precedent. The district court denied Mr. Suarez-Tejeda's habeas petition, holding that neither his detention nor the procedures used to evaluate his continued detention violate the constitution. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). See Zadvydas, 533 U.S. at 687; Ho v. Greene, 204 F.3d 1045, 1051-52 (10th Cir. 2000), overruled on other grounds by Zadvydas, 533 U.S. at 682. Because Mr. Suarez-Tejeda has been released on parole and is not presently detained by the INS, his appeal is moot.

---

and Customs Enforcement ("BICE"), the Bureau of Customs and Border Protection ("BCBP"), and the Bureau of Citizenship and Immigration Services ("BCIS"). BICE is the bureau now responsible for the detention and removal of aliens.

<u>Background</u>

Mr. Suarez-Tejeda first arrived in the United States in 1980 as part of the Mariel boat lift, during which approximately 120,000 Cubans left the Mariel harbor in Cuba and crossed by boat to the United States. <u>See</u> <u>Rosales-Garcia v. Holland</u>, 322 F.3d 386, 390-91 (6th Cir. 2003); <u>Gisbert v. United States Attorney Gen.</u>, 988 F.2d 1437, 1440 (5th Cir. 1993), <u>amended</u>, 997 F.2d 1122 (5th Cir. 1993). The INS detained the aliens at the border and decided to exclude them from entry into the United States. After this initial detention, Mr. Suarez-Tejeda was granted conditional parole into the United States and released by the INS under § 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), which authorizes the Attorney General in his discretion to parole into the United States any alien who is applying for admission to the United States.

Although Mr. Suarez-Tejeda was paroled into the United States, this parole is not to be "regarded as an admission," 8 U.S.C. § 1182(d)(5)(A), and Mr. Suarez-Tejeda is "legally considered to be detained at the border and hence as never having effected entry into this country." <u>Sierra v. INS</u>, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting <u>Gisbert</u>, 988 F.2d at 1440). <u>See also</u> <u>Zadvydas</u>, 533 U.S. at 693. He is "treated as if stopped at the border" for purposes of immigration law. <u>Shaughnessy v. United States ex rel. Mezei</u>, 345 U.S. 206, 215

(1953). Because Mr. Suarez-Tejeda is ineligible for admission to the United States, he is correctly classified as an inadmissible alien under IIRIRA.[2] See United States v. Landeros-Mendez, 206 F.3d 1354, 1355 n.1 (10th Cir. 2000).

After being paroled into the United States, Mr. Suarez-Tejeda was convicted of robbery with a deadly weapon in January 1982 and sentenced to three years imprisonment. R. Doc. 15, Ex. 1 at 1, 3. After several probation violations and subsequent convictions, id., Exs. 3-6, Mr. Suarez-Tejeda's parole was revoked by the INS and he was taken into INS custody, id., Ex. 1 at 2-3. Mr. Suarez-Tejeda was granted a second parole release on February 5, 1988. Id., Ex. 7. However, in 1993, Mr. Suarez-Tejeda was convicted of possession for sale of cocaine base, sale and transportation of marijuana, and sale and possession of marijuana; he was sentenced to three years imprisonment. Id., Ex. 10. The INS again revoked his parole in April 1995, and he was taken into INS custody. Id., Ex. 11. In September 1995, he was ordered excluded and deported from the United States. Id., Ex. 14. However, because Cuba has refused the return of her citizens, and because the United States has allowed the parole of inadmissible aliens rather than forcing the return of Cuba's citizens to her shores, Mr. Suarez-

---

[2]Prior to IIRIRA, aliens ineligible for admission were referred to as "excludable" aliens. IIRIRA changed the immigration terminology and now excludable aliens are referred to as "inadmissible" aliens. See United States v. Landeros-Mendez, 206 F.3d 1354, 1355 n.1 (10th Cir. 2000); Sierra, 258 F.3d at 1215 n.1.

Tejeda remained detained until October 2003 in INS custody at the Federal Correction Institution in El Reno, Oklahoma.

Beginning in 1995, Mr. Suarez-Tejeda received regular parole reviews while in INS custody under the procedures set forth at 8 C.F.R. § 212.12. See R. Doc. 15, Exs. 14, 16-18, 20-21. These regulations govern the parole and periodic review of the custody of Mariel Cubans and are commonly referred to as the "Cuban Review Plan." See 8 C.F.R. § 212.12. Section 212.12

> applies to any Mariel Cuban, detained under the authority of the Immigration and Nationality Act in any facility, who has not been approved for release or who is currently awaiting movement to a Service or Bureau of Prisons (BOP) facility. In addition, it covers the revocation of parole for those Mariel Cubans who have been released on parole at any time.

Id. § 212.12(a). Section 212.12 also discusses release of Mariel Cubans on parole, stating that "No detainee may be released on parole until suitable sponsorship or placement has been found for the detainee. The paroled detainee must abide by the parole conditions specified by the Service in relation to his sponsorship or placement." Id. § 212.12(f). The regulations recognize two suitable placements upon parole–either sponsorship "with a close relative such as a parent, spouse, child, or sibling who is a lawful permanent resident or a citizen of the United States," or placement in an approved halfway house or mental health/community project. Id. § 212.12(f)(1)-(3).

Mr. Suarez-Tejeda's most recent review before the Cuban Review Panel

was held in January 2003. Aplt. Br. at 7. In October 2003, while his habeas appeal was pending before this court, Mr. Suarez-Tejeda was approved for release on parole and transferred to a halfway house in Fort Worth, Texas. On December 1, 2003, following oral arguments, Mr. Suarez-Tejeda was released from the halfway house upon placement with a sponsor.

Discussion

On appeal, Mr. Suarez-Tejeda asserts both statutory and constitutional claims. Mr. Suarez-Tejeda argues that the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), "definitely construed the statute under which aliens subject to orders of deportation are detained by the immigration and naturalization service" to prohibit indefinite detention of both removable and inadmissible aliens. Aplt. Br. at 8. Mr. Suarez-Tejeda also asserts a substantive due process claim, arguing that the indefinite detention of inadmissible aliens is unconstitutional in light of the Supreme Court's holding in Zadvydas. Finally, Mr. Suarez-Tejeda argues that the Cuban Review Plan operates without objective standards to guide the discretion and judgment of the INS, and that this lack of standards and deviations from the procedures set forth in the Cuban Review Plan violate his procedural due process rights. Because we conclude that Mr. Suarez-Tejeda's transfer to a halfway house and subsequent release to a sponsor moots

the appeal, we do not reach the substantive issues.

Mr. Suarez-Tejeda was released from INS detention and placed in a halfway house in October 2003. Under 28 U.S.C. § 2241(c)(1), "[t]he writ of habeas corpus shall not extend to a prisoner unless [h]e is in custody." However, "the fact that Appellant is no longer in custody does not automatically moot Appellant's petition because he was in custody at the time of filing." Riley v. INS, 310 F.3d 1253, 1256 (10th Cir. 2002); see also Spencer v. Kemna, 523 U.S. 1, 7 (1998) (holding the custody requirement in the habeas statute only requires that the petitioner be "in custody" at the time the petition was filed). Rather, the "more substantial question" is whether Mr. Suarez-Tejeda's release moots his petition because the court is no longer presented with a case or controversy as required under Article III, § 2, of the Constitution. Spencer, 523 U.S. at 7.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). This requirement must exist at all stages of appellate review, and it is "not enough that the dispute was alive when the suit was filed." Id. Federal courts have no authority to give an opinion upon a question that is moot as a result of events that occur during the pendency of the action. Church of Scientology v. United States, 506 U.S. 9, 12 (1992).

Because Mr. Suarez-Tejeda is no longer detained and is not currently subject to regular review by the Cuban Review Panel, we must look beyond the initial controversy and determine if his appeal is now moot. Several circuits have addressed this issue, all with slightly different approaches. In Rosales-Garcia v. Holland, 322 F.3d 386, 395-96 (6th Cir. 2003), the Sixth circuit concluded that release constitutes merely a "reprieve from detention," and therefore a Mariel Cuban is still threatened with actual injury. The court also applied two exceptions to the mootness doctrine, finding the case one of voluntary cessation and capable of repetition yet evading review. The Fifth Circuit in Gisbert v. United States Attorney General, 988 F.2d 1437, 1440 n.5 (5th Cir. 1993), originally held a petition of a Mariel Cuban moot based on release without any analysis. The court later amended the opinion to remove the footnote regarding mootness. Gisbert v. United States Attorney Gen., 997 F.2d 1122, 1123 (5th Cir. 1993). The Ninth Circuit, however, held such a claim was moot on release where the government issued a statement it would not revoke parole absent criminal reinvolvement. See Picrin-Peron v. Rison, 930 F.2d 773, 776 (9th Cir. 1991). After reviewing the various approaches, for the reasons discussed below, we hold that Mr. Suarez-Tejeda's release from detention moots his appeal.

"To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

- 8 -

redressed by a favorable judicial decision." <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990). Mr. Suarez-Tejeda brought this action in the form of a habeas petition and has requested release from indefinite detention. Mr. Suarez-Tejeda has been released on parole and is no longer indefinitely detained. Under § 212.12, however, the INS may revoke Mr. Suarez-Tejeda's parole if he "violates any condition of parole" or if such revocation is "in the public interest." 8 C.F.R. § 212.12.[3] Mr. Suarez-Tejeda attempts to distinguish <u>Riley</u>, 310 F.3d at 1257, based on the unique application of the "Cuban Review Plan," arguing he is threatened with future injury and his claim is not moot. However, based on the record before us, there is no support for Mr. Suarez-Tejeda's claims that his parole will again be revoked and this claim is merely speculative. <u>See</u> <u>McAlpine</u>

---

[3] Under the Cuban Review Plan,

> The Associate Commissioner for Enforcement shall have authority, in the exercise of discretion, to revoke parole in respect to Mariel Cubans. A district director may also revoke parole when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Associate Commissioner. Parole may be revoked in the exercise of discretion when, in the opinion of the revoking official:
> (1) The purposes of parole have been served;
> (2) The Mariel Cuban violates any condition of parole;
> (3) It is appropriate to enforce an order of exclusion or to commence proceedings against a Mariel Cuban; or
> (4) The period of parole has expired without being renewed.

8 C.F.R. § 212.12(h).

v. Thompson, 187 F.3d 1213, 1218 (10th Cir. 1999) (noting that speculation that a defendant will "break the law or otherwise violate the conditions of their release . . . would undermine our presumption of innocence . . . and the rehabilitative focus of the parole system"). A "threatened injury must be 'certainly impending' to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). Mr. Suarez-Tejeda's allegations of potential future custody are too attenuated to satisfy the requirements of Article III. Id.

Mr. Suarez-Tejeda's appeal thus is rendered moot unless he meets one of the exceptions to the mootness doctrine. Riley, 310 F.3d at 1256. This court will

> not dismiss a petition as moot if (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

Id. at 1257 (collecting cases). We find none of the above exceptions to be applicable in this case.

Exceptions 1 and 4 are clearly inapplicable. Mr. Suarez-Tejeda argues that this case is not moot under exception 2 because the case is one that is "capable of repetition, yet evading review." See S. Utah Wilderness Alliance v. Smith, 110 F.3d 724, 729 (10th Cir. 1997). However, we find this exception inapplicable. This exception only applies when "(1) the challenged action was in its duration

- 10 -

too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also United States v. Seminole Nation of Okla., 321 F.3d 939, 943 (10th Cir. 2002). The first condition is not satisfied in this case. If the INS resumes detention at some future date, there is no reason to believe detention will be so short in duration as to deny Mr. Suarez-Tejeda the opportunity to litigate his claims at that time. See Rio Grande Silvery Minnow v. Keys, No. 02-2254, 02-2295, 02-2255, 02-2304, 02-2267, 2004 WL 25310, at *2 (10th Cir. 2004 Jan. 5, 2004).

We likewise reject the argument that the narrow exception of voluntary cessation is applicable. This exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001). It "protects plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." Id. (internal quotation marks and citations omitted). There is no suggestion that the government's release of Mr. Suarez-Tejeda was the result of an attempt by the government to evade review. Rather, Mr. Suarez-Tejeda merely happened to be released on parole while his appeal was pending before this court. See Silvery

- 11 -

Minnow, 2004 WL 25310, at *3. We therefore find the exception of voluntary cessation inapplicable. See Riley, 310 F.3d at 1257.

In this case, the circumstances have changed during the pendency of the action to make Mr. Suarez-Tejeda's claim moot. See id. Mr. Suarez-Tejeda was initially released to a halfway house and was recently released to a sponsor. Even Mr. Suarez-Tejeda acknowledges release into society without some type of sponsorship or placement is not an option. Before the district court, Mr. Suarez-Tejeda stated that an appropriate remedy incident to the grant of habeas corpus relief "should be fashioned to reasonably assure Mr. Suarez-Tejeda's availability for deportation should removal become possible. In this regard, the release conditions would be similar to those employed by the federal courts to reasonably assure a person's availability for trial and the safety of the community." R. Doc. 27 at 7. Mr. Suarez-Tejeda has effectively received the relief he has requested.

Although the INS may resume detention at some future date, Mr. Suarez-Tejeda would not be without a remedy at that time. "The case or controversy requirement of Article III admonishes federal courts to avoid premature adjudication and to abstain from entangling themselves in abstract disagreements." U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1208 (10th Cir. 1999) (internal quotation marks and citations omitted). Any opinion issued at this time would be purely advisory in nature. Based on the record before us, therefore, we

hold that Mr. Suarez-Tejeda's "release from detention moots his challenge to the legality of his extended detention." Riley, 310 F.3d at 1257. For the same reasons, Mr. Suarez-Tejeda's procedural due process claims are now moot.

For the foregoing reasons, we DISMISS the appeal as moot.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

02-6341 - *Suarez-Tejeda v. United States*

**HARTZ**, Circuit Judge, concurring specially:

I agree that the appeal must be dismissed as moot.  Mr. Suarez-Tejeda has obtained all the relief he sought on appeal.  In particular, I do not read his opening brief on appeal as raising any argument challenging the process for revoking parole once it is granted.